UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                              CASE NO: 2:16-cr-65-FtM-UAMRM

IRA SHAWNTAE SHAW

### ORDER[1]

This matter comes before the Court on the Defendant, Ira Shawntae Shaw's Motion for Miscellaneous Relief in the form of a *Daubert* Hearing or to Exclude Fingerprint Analysis Testimony from the Government's Expert (Doc. #26) filed on August 19, 2016. The Government filed its Response in Opposition (Doc. #31) on September 9, 2016. The Defendant filed a Reply Brief (Doc. #38) on September 28, 2016. The Motion is fully briefed and ripe for the Court's review.

### BACKGROUND

On June 29, 2016, a federal grand jury sitting in Fort Myers, Florida, returned an Indictment against the Defendant charging him with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Detective Emily DeStefanis, an officer with the Fort Myers Police Department (FMPD), took custody of a firearm recovered on the scene of the Defendant's arrest at the Thomas Street Apartments in Fort Myers, Florida.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Det. DeStefanis delivered the firearm to the FMPD Crime Scene Unit. Once there, crime scene technician Marissa Poppell recovered a latent fingerprint from the magazine located inside the firearm. Crime scene/latent fingerprint analyst Trina Maurice compared the latent fingerprint from the magazine against a known standard for Shaw. Maurice's analysis determined that the print from the firearm's magazine matched the known fingerprints for Shaw. Maurice then rolled Shaw's fingerprints and confirmed that the latent fingerprint from the magazine matched Shaw's newly taken fingerprints.

In her Basis of Opinion, Maurice describes the scientific methodology she used to compare the magazine fingerprint to Shaw's known fingerprints. Maurice says the analysis involved four main phases: Analysis, Comparison, Evaluation, and Verification (ACE-V).

Maurice states that she analyzed:

> All variables influencing the clarity of the friction ridge impressions in question. I determined that there was sufficient quality and quantity of friction ridge detail in the latent print to individualize them. If I had determined that the latent prints lacked sufficient quality and quantity of detail, then the examination would have stopped at this step.

Maurice then performed the second phase or comparison phase required by ACE-V. This phase consists of three separate levels.

- In Level 1 of the comparison phase, I performed a macroscopic examination. I examined the fingerprints and the latent to look for general agreement in the flow and pattern of the friction ridges.

- The second level of the comparison phase is microscopic and I conduct my examination using a magnifying loop. Friction ridges have certain unique characteristics which are referred to as minutiae or points of comparison. Ridges that flow continuously then stop abruptly are called ending ridges. Ridges that flow then split into two separate ridges are called

2

- a bifurcation. There are also friction ridges that appear as dots. In this portion of the examination, I compared these characteristics and their relative positions to other minutiae in both the fingerprint standard and the latent.

- Level 3 of the comparison phase is also microscopic and was performed simultaneously with the Level 2 examination. This part of the comparison process looked at the finer details present in the latent fingerprint. I examined the ridge width, pore structure if it can be seen, ridge edges, scars, incipient ridges if present, and other features that I considered to be unique to the fingerprint and latent print.

After that, Maurice performed the evaluation phase in which she evaluated the entirety of the latent print and the unique characteristics that she observed during the examinations. In the final phase, the verification phase, Maurice had Jessica Worthy, a fellow crime scene/latent print analysts with the FMPD review her work and compare the fingerprint on the magazine to Shaw's known fingerprints. Worthy confirmed Maurice's analysis.

Shaw objects to Maurice's conclusions and moves the Court for a *Daubert* hearing on Maurice's methodology or to exclude Maurice's expert testimony from trial.

## **DISCUSSION**

Shaw argues that Maurice's methodology fails to meet the standards establish under Fed. R. Evid. 702 and *Daubert*, and therefore her testimony should be excluded from trial. The Government states that Maurice's latent fingerprint report satisfies both *Daubert* and Rule 702.

Under the Federal Rules of Evidence, expert testimony is admissible if: (1) the expert is qualified to testify regarding the subject matter of her testimony; (2) the methodology that the expert used to reach his or her conclusions is sufficiently reliable;

3

and (3) the expert's testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue. *United States v. Scott*, 403 F. App'x 392, 397 (11th Cir. 2010) (citing *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004) (*en banc*); Fed. R. Evid. 702.

### (1) *Whether Maurice is Qualified to Testify as an Expert*

Maurice's Curriculum Vitae states that she received a Masters of Science in Criminal Forensic Studies from Florida Gulf Coast University in April of 2008. Maurice was employed by the FMPD as a crime scene technician in 2009 and has served as a latent print examiner with the FMPD since 2012. Thus, the Court finds that Maurice is qualified and has sufficient experience to testify as an expert regarding latent fingerprint analysis.

### (2) *Whether the ACE-V Method is Reliable*

Before permitting expert testimony, the district court must make a preliminary determination as to whether the expert's methodology is reliable. *Scott*, 403 F. App'x at 397. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 469 (1993), the Supreme Court provided a non-exclusive list of factors for the district court to consider:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier,* 387 F.3d at 1262. These factors are only general guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).

In regards to the admission of fingerprint evidence, federal courts have routinely upheld the admissibility of fingerprint evidence under *Daubert*.  *Scott*, 403 F. App'x at 398; See *United States v. Abreu,* 406 F.3d 1304, 1307 (11th Cir.2005) (noting that the Eleventh Circuit Court of Appeals has previously upheld the admission of fingerprint exerts under *Daubert*).  In *Abreu,* the Eleventh Circuit upheld the district court's decision to admit fingerprint evidence in part because the examiners followed a uniform methodology. *Id.* The Eleventh Circuit explained that the district court, in *Abreu*, did not clearly err by giving significant weight to the general acceptance of fingerprint evidence. *Id.* Other Circuits have also upheld the admission of expert testimony concerning fingerprint examination as well. *See, e.g., United States v. Pena,* 586 F.3d 105, 110–11 (1st Cir.2009) (the district court did not abuse its discretion by permitting expert testimony that was based on the ACE–V method); *United States v. Mitchell,* 365 F.3d 215, 221–22, 246 (3d Cir.2004) (same); *United States v. Baines,* 573 F.3d 979, 983, 989–92 (10th Cir.2009) (same); *United States v. Crisp,* 324 F.3d 261, 266–70 (4th Cir.2003) (upholding admission of fingerprint evidence under *Daubert*, and noting that "[f]ingerprint identification has been admissible as reliable evidence in criminal trials in this country since at least 1911."); *United States v. Havvard,* 260 F.3d 597, 600–02 (7th Cir.2001) (testimony concerning latent fingerprint examination was properly admitted under *Daubert* ).

In this case, Maurice's analysis followed ACE-V a formal and established fingerprint methodology that has been allowed by courts for over twenty years.  Her work was reviewed by another crime scene/latent print analyst who verified Maurice's conclusions.  Although there does not appear to be a scientifically determined error rate for ACE-V methodology, Courts have found that the ACE-V method is reliable and it is

generally accepted in the fingerprint analysis community. *See Scott*, 403 F. App'x at 397–98 (finding that the ACE–V method has been in use for over twenty years, and is generally accepted within the community of fingerprint experts).  The Court finds that the ACE-V fingerprint methodology used in this case is reliable and admissible under *Daubert* and Rule 702.  Because the ACE-V method has been generally found to be reliable in the fingerprint analysis community, the Eleventh Circuit, and this Court, there is no justification at this time to hold a *Daubert* hearing regarding the reliability of the scientific method used by Maurice.

### (3) *Whether the Expert's Testimony will Assist the Trier of Fact*

The heart of the issue in this case is whether or not Shaw was in possession of a firearm.  Crime scene investigators and fingerprint analyst from the FMPD found what they determined to be Shaw's fingerprint on the firearm's magazine located inside the firearm.  Shaw will have the opportunity to cross examine Maurice, and if he wishes, put on competing testimony from his own expert, Professor Jessica G. Cino.  As such, Maurice's testimony will aid the jurors in making their determination concerning the ultimate issue—did Shaw have a firearm in his possession.  Since Maurice's testimony goes straight to the issue at hand in this case her testimony will assist the trier of fact in making their decision.

## **CONCLUSION**

After reviewing the Parties memoranda of law and Shaw's Reply Brief, the Court finds that there is insufficient grounds for a *Daubert* hearing.  ACE-V is an accepted method for analyzing latent fingerprints and Maurice made a clear record of how she applied the ACE-V methodology to the fingerprint analysis at issue in this case.

…

Accordingly, it is now

**ORDERED:**

Ira Shawntae Shaw's Motion for Miscellaneous Relief in the form of a *Daubert* Hearing or to Exclude Fingerprint Analysis Testimony from the Government's Expert ([Doc. #26](Doc. #26)) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this September 29, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record